J-S94018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF H.D.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.G., MOTHER | No. 1510 MDA 2016 |

Appeal from the Decree entered August 19, 2016
in the Court of Common Pleas of Lancaster County,
Orphans' Court, at No(s): 545 of 2016.

BEFORE: LAZARUS, J., RANSOM, J., and FITZGERALD, J.*

MEMORANDUM BY RANSOM, J.:                    **FILED FEBRUARY 27, 2017**

Appellant, C.G., ("Mother"), appeals from the decree entered in the Lancaster County Court of Common Pleas, which terminated her parental rights to her minor daughter, H.D.S., pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b). Counsel for Mother has also filed with this Court both an application for leave to withdraw as counsel and a brief pursuant to ***Anders v. California***, 87 S. Ct. 1396 (1967). We grant counsel's application for leave to withdraw and affirm the decision of the Orphans' Court.

The relevant facts and procedural history are as follows: Child was born to Mother and Q.S. ("Father") in August 2004. Pursuant to a court order entered in April 2006, Child has been in the sole legal and primary physical custody of P.S. and R.S. ("Paternal Grandparents"), and Mother has

_____
* Former Justice specially assigned to the Superior Court.

been awarded periods of visitation. On March 8, 2016, Paternal Grandparents filed a petition to confirm the consent to adoption given by Father, and to involuntarily terminate Mother's parental rights ("TPR Petition"). The TPR Petition was served on Mother on March 31, 2016.

The Orphans' Court held an evidentiary hearing on August 19, 2016. Both Paternal Grandparents testified. Mother presented her own testimony, as well as testimony from M.S., her aunt. At the request of the Orphans' Court, Child testified in chambers. The court made the following factual conclusions:

> The [c]ourt found the testimony of [Paternal Grandparents] and Child to be credible and persuasive. Conversely, the [c]ourt found that [M.S.'s] testimony and Mother's testimony was inconsistent and lacked credibility.
>
> The [c]ourt finds the following evidence relevant and persuasive. Both [Paternal Grandparents] and Mother agree that, for the first two months of her life, [Child] lived between [the parties]. Since October 2004, [Child] primarily resided with [Paternal Grandparents]. [Child] was returned to Mother's care in December 2004. That evening, Mother was having difficulty with [Child], who was fussy and not used to Mother. Mother brought [Child] to the home of [M.S.], who intervened on Mother's behalf and contacted [Paternal Grandparents]. [The parties] signed a written custody agreement and Child was returned to [Paternal Grandparents]. Since that time, [Paternal Grandparents] have been performing all rights, duties, and responsibilities for Child. Mother testified that she saw Child on two occasions since 2004.

Orphans' Court Opinion, 9/23/16, at 2-3.

That same day, the court issued a decree confirming Father's consent to adoption and terminating Mother's parental rights pursuant to 23 Pa.C.S.

§ 2511(a)(1) and (b). Mother filed this timely appeal, as well as a statement pursuant to Pa.R.A.P. 1925(b). On October 26, 2016, Mother's counsel filed an application to withdraw as counsel and a brief pursuant to *Anders*.

The *Anders* brief raises the following issue:

> A. Whether [Paternal Grandparents] produced sufficient evidence to support granting their request to involuntarily terminate Mother's parental rights.

*Anders* Brief at 5.

Initially, we address the *Anders* brief and application seeking permission to withdraw. The principles that guide our review are as follows:

> When counsel files an *Anders* brief, this Court may not review the merits without first addressing counsel's request to withdraw. *Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa. Super. 2013). In *In re V.E.*, 417 Pa. Super. 68, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. *Id.* at 1275. In these cases, counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit and *Anders* brief. *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004). We review counsel's *Anders* brief for compliance with the requirements set forth by our Supreme Court in *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (Pa. 2009).
>
> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) states counsel's reasons for

> concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> *Id.* at 361.
>
> Additionally, pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005) and its progeny, "[c]ounsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[`]s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*), *quoting* **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa. Super. 2004).

**In re X.J.**, 105 A.3d 1, 3-4 (Pa. Super. 2014).

Here, we conclude that Mother's counsel has complied with the requirements as set forth above. Counsel has provided Mother with a copy of the **Anders** brief and indicated in his correspondence that Mother may proceed *pro se* or retain new counsel. In his brief, counsel references facts of record that might arguably support Mother's appeal and sets forth his conclusion that the appeal is frivolous. **See Anders** Brief at 13-14. Accordingly, we undertake our independent review of the record to determine whether Mother's appeal is wholly frivolous.

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is

defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citations omitted).

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

> a) The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.*

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." **Id.**

In the instant case, the Orphans' Court properly concluded that the Agency met the requirements of Section 2511(a)(1). Applying the above standards, the Orphans' Court concluded:

> The record is clear, Mother did not contact [Paternal Grandparents] or the Child in the six months prior to her receipt of the termination petition. . . . She has not provided any type of emotional or financial support to [Child], has not made any attempts at maintaining contact with [Child], and has not used any of the resources at her disposal to maintain a place of importance in [Child's] life. Mother failed in all respects to perform parental duties or responsibilities within that time period, and arguably throughout [Child's] whole life.

> \*\*\*

> By Mother's own testimony, she attempted to call [Paternal Grandparents] only a few times before she stopped completely. Mother did not ask [Paternal Grandparents] for contact. Mother testified the she gave up and did nothing else thereafter. The last time Mother saw [Child] was over eight years ago. Mother clearly failed to exert herself to establish and maintain a place of importance in [Child's] life.

> \*\*\*

> Mother argues that [Paternal Grandparents] created an insurmountable obstacle to her maintaining a parent-child relationship and contact with [Child]. The Court does not find this argument credible.

> Child has not seen Mother for at least eight years. [Paternal Grandparents] have not hidden [Child] from Mother. [They] have resided in the same home since

before Child's birth. Mother knew where [they] lived. [Paternal Grandparents] did not withhold any mail from Mother addressed to [Child], Mother testified that she did not send any cards, letters, or presents to [Child]. Mother made no attempts to contact [Child] through her family members, who had intervened on her behalf before. Mother presented no evidence that she inquired into [Child's] well-being from any individual who had contact with [Child].

Outside of contacting [Paternal Grandparents] or Child directly, Mother had other reasonable avenues available to her to maintain contact with [Child]. [Child] is the subject of an active custody order. Mother made no effort to enforce visits, as provided by the custody order. Moreover, with the existence of a custody order, Mother could have sought to modify the custody order. Mother did not initiate any action in the custody matter.

Despite having resources to maintain contact with [Child] Mother exerted no effort whatsoever to be a part of [Child's] life. Mother testified that she was young and stupid when [Child] was born and could not handle raising [Child]. Mother's inability to parent [Child] is no different than refusing to perform parental duties and responsibilities. The Court found that Mother did not utilize all, or really any, of the resources available to her to maintain a relationship with [Child].

Orphan's Court Opinion, 9/23/16, at 4-7 (citation omitted).

Our review of the record amply support's the Orphans' Court's conclusions. It was for the Orphans' Court, as a matter of credibility, to accord the weight to be given Mother's testimony. *In re M.G.*, *supra*. The court did not abuse its discretion concluding that Mother "evidenced a settled purpose of relinquishing her parental claim" to Child, and has failed to perform any parental duties during the relevant time period. Orphans'

Court Opinion at 7. Accordingly, the Orphans' Court properly terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1).

We also agree with the Orphans' Court's determination that, pursuant to 23 Pa.C.S. § 2511(b), termination of Mother's parental rights is in the best interest of Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the Orphans' Court provided the following rationale to support its conclusion that termination of Mother's parental rights was in Child's best interest:

> The Court is persuaded by the totality of the evidence, as well as the Guardian *ad litem*'s recommendation, that termination of Mother's parental rights in furtherance of adoption is in [Child's] best interest. Mother has been either unwilling or unable to meet [Child's] basic needs for an inordinate amount of years. Mother's lack of involvement began when [Child] was just a few months old. Mother's own testimony and actions are direct evidence that any parent-child relationship they shared ended years ago.
>
> [Child] has no meaningful contact with Mother. She is currently twelve years old and has not seen Mother since she was an infant. For over 95% of her life, [Child] has had no contact with Mother. She is not bonded to Mother. In fact, she testified she would not recognize Mother if she saw her. Therefore, the Court found that terminating Mother's parental rights would not be detrimental to [Child's] well-being or destroy an existing, necessary or beneficial relationship between the Child and Mother.
>
> Conversely, [Paternal Grandparents] have provided [Child] with the love, comfort and security that Mother has failed to provide. [Child] has been living as an intact family with [Paternal Grandparents] since December 2004. They have maintained a continuous parent-daughter relationship. It was not until Father's girlfriend told [Child] that Father was her father that [Child] was even made aware that [Paternal Grandparents] were not her parents. [Paternal Grandparents] have provided for [Child's] physical, emotional, and mental well-being. She is at an age where stability and consistency are crucial. [Paternal Grandparents] provide the stability and permanency that [Child] needs and deserves.
>
> Based upon the totality of the record and for the reasons set forth above, the Court found that the developmental, physical and emotional needs and welfare

of [Child] would be met and enhanced by the termination of the parental rights of Mother, so that [Child] may be adopted.

Orphans' Court Opinion, 9/23/16, at 8-9.

Once again, our review of the record amply supports the Orphans' Court's conclusions. Additionally, we note Child's preference to not see her Mother and her wish to be adopted by Paternal Grandparents. *See* N.T., 8/19/16, at 124-38.

In sum, our review of the record supports the conclusion by Mother's counsel that the issue Mother wished to raise on appeal is frivolous. Thus, we agree with the Orphans' Court's conclusion that the Paternal Grandparents met their burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Further, our independent review of the record reveals no non-frivolous claims that Mother could have raised. Accordingly, we grant Mother's counsel's application to withdraw and affirm.

Application to Withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2017